**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE EIGHTH CIRCUIT**
_____

**No: 22-2827**
_____

Heidi Nelson, formerly known
as Heidi Martin,

Appellant,

vs.

Lake Elmo Bank; and Olivia Alvarado,
individually and as an employee,

Appellees.
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
_____

**APPELLANT'S REPLY BRIEF**
_____

Stephen C. Fiebiger (#0149664)
Stephen C. Fiebiger Law Office, Chtd.
3000 West County Road 42, Suite 310
Burnsville, MN 55337
(952) 746-5171
Stephenfieblaw@gmail.com

**ATTORNEY FOR APPELLANT**

# TABLE OF CONTENTS

Page

Table of Authorities…………………………………………………..…ii

Argument……………………………………………………….………… 1

   I.  Summary Judgment on Nelson's Sex Discrimination Claim Under the
     Minnesota Human Rights Act, Minn. Stat. § 363A.01, et seq, Should Be
     Reversed ………………………………………………………… 1

   A. Prima Facie Case …………………………………………………... 1
   B. Evidence of Pretext …………………………………………………2
       1. Sham Investigation …………………………………………....4
       2. Changing Versions ……………………………………………7
       3. Failure to Follow Policies and Practices ………………………12
       4. Comparator Evidence …………………………………………13
       5. Shifting Reasons …………………………………………… 17

   II. Summary Judgment on Nelson's Defamation Claims Should
     Be Reversed ………………………………………………………… 18

   A. Publication ………………………………………………………18
   B. Qualified Privilege Erroneously Granted for Statements During the
     Investigation ……………………………………………………19
   C. Privilege was Abused …………………………………………...20
   D. No Qualified Privilege for Defamatory Statements to Family
     and Boyfriend …………………………………………………...23
   E. Abuse of Privilege ………………………………………………28

Conclusion ……………………………………………………………..28

Certificate of Compliance ……………………………………………...29

Appellate Case: 22-2827   Page: 2   Date Filed: 12/20/2022 Entry ID: 5228888

# TABLE OF AUTHORITIES

**Page**

*Aromashodu v. Swarovski North America Limited, et al*, 2022 WL 16544381
(Minn. Ct. App., Oct. 31, 2022), ___ N.W.2d ___..........................................10, 11

*Bahr v. Boise Cascade*, 766 N.W.2d 910 (Minn. 2009)…………………………..21

*Becker v. Alloy Hardfacing & Eng'g & Co.*, 401 N.W.2d 655
(Minn. 1987)……………………………………………………………………..25, 28

*Bol v. Cole*, 561 N.W.2d 143 (Minn. 1997)…………………………………..19, 25

*Erickson v. Farmland Indus., Inc*. 271 F.3d 718 (8th Cir. 2001)………........2. 5, 12

*Furnco Constr. Co. v. Waters*, 438 U.S. 567 (1978)……………………...15, 16, 17

*Frankson v. Design Space Intern.*, 394 N.W.2d 140 (Minn. 1986)………………18

*Frieze v. Boatman's Bank of Belton*, 950 F.2d 538 (8th Cir. 1991)………………15

*Hanson v. Dep't of Nat. Res.*, 972 N.W.2d 363 (Minn. 2022)……………………11

*Johnson v. AT&T Corp.*, 422 F.3d 756 (8th Cir. 2005) ………..……………...5, 6

*Johnson v. Freborg*, 978 N.W.2d 911 (Minn. Ct. App. 2022)……………………25

*Krekelberg v. City of Minneapolis*, 991 F.3d 949 (8th Cir. 2021)………………...19

*Lake v. Yellow Transportation, Inc.*, 596 F.3d 871 (8th Cir. 2010) ……..……..1, 18

*Larson v. Gannett Co.*, 940 N.W.2d 120 (Minn. 2020)…………………………..18

*Lewis v. Equitable Life Assur. Soc. of the U.S.*, 389 N.W.2d 876
(Minn. 1986)…………………………………………………………………….20, 23

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) …...………………1, 15

*Moreno v. Crookston Times Printing Co.*, 610 N.W.2d 323 (Minn. 2000) ………27

Appellate Case: 22-2827    Page: 3    Date Filed: 12/20/2022 Entry ID: 5228888

Pye v. Nu Aire, Inc., 641 F.3d 1011 (8th Cir. 2011)……………………………….2, 3

*Richey v. City of Independence*, 540 F.3d 779 (8th Cir. 2008)…………………3, 4

*Rideout v. JBS USA, LLC*, 716 F.3d 1079 (8th Cir. 2013) ………………..…....5

Rosenblatt v. Baer, 383 U.S. 75 (1966)……………………………………27, 28

*Scott Fetzer Company v. Williamson*, 101 F.3d 549 (8th Cir. 1996)……………...19

*Stuempges v. Parke, Davis & Co*., 297 N.W.2d 252 (Minn. 1980)……………….21

*Tolan v. Cotton*, 572 U.S. 650 (2014) ………………………………………….3

*Twymon v. Wells Fargo & Co*., 462 F.3d 925 (8th Cir. 2006)…………………..2

*Wallace v. DTG Operations, Inc*., 442 F.3d 1112 (8th Cir. 2006) ……………...6

*White v. Honeywell, Inc.,*141 F.3d 1270 (8th Cir. 1998) …………...………….14

*Wirig v. Kinney Shoes, Corp*., 461 N.W.2d 374 (Minn. 1990)…………………...19

## Statutes

Minn. Stat. § 363A.01, et seq …………………………………………….......1

Minn. Stat. § 609.3451, subd. 1 (2020)…………………………………...25

## Rules

Federal Rules of Civil Procedure 56(a) ………………………………………….3

Federal Rules of Civil Procedure 56(c)(2) ………………………………….....3

Federal Rules of Evidence 801(d)(2)(D) ………………………………….....14

Federal Rules of Evidence 802……………………………………………..3

Appellate Case: 22-2827    Page: 4    Date Filed: 12/20/2022 Entry ID: 5228888

# ARGUMENT

**I. Summary Judgment on Nelson's Sex Discrimination Claim Under the Minnesota Human Rights Act, Minn. Stat. § 363A.01, et seq, Should Be Reversed.**

**A. Prima Facie Case.**

Lake Elmo Bank (Bank) challenges the fourth element of the prima facie case. Appellees' Br. at 30-32. Evidence of pretext, normally considered at step three of the *McDonnell Douglas* analysis can satisfy the inference-of-discrimination element of the prima facie case. *Lake v. Yellow Transp. Inc*., 596 F.3d 871, 874 (8th Cir. 2010). The district court found that Nelson contended the Bank's proffered reason for terminating her was pretextual and therefore the fourth element was satisfied. Order at 9-10,ADD009-010. The Bank raises no prejudice by this analysis.

Next, all of the individuals involved in the disputed incident were not female. Appellees' Br. at 31. The Bank's President and CEO, Daniel Raleigh, male, was a decision-maker in Nelson's termination. APP321.R.Doc. 43,62, at 15. Raleigh and Nelson are not in the same protected class. Appellees' Br. at 31-32. The Bank's changing position about who made the decision to discharge Nelson casts doubt on the discharge process that evidences pretext. The Bank is not entitled to a favorable inference from the evidence of who decided to terminate Nelson.

1

**B. Evidence of Pretext.**

To show pretext, a plaintiff must show that the proffered justification for the adverse employment action is unworthy of credence. *Erickson v. Farmland Indus., Inc.* 271 F.3d 718, 726 (8th Cir. 2001). The methods which a plaintiff may use to demonstrate pretext include: (1) demonstrating that the proffered reason has no basis in fact, (2) demonstrating that the action the employer took was contrary to a policy or practice, (3) showing that it is unlikely that the employer would have acted on the proffered reason, and (4) providing evidence of a discriminatory attitude in the workplace. *Id.* at 727. Nelson submitted evidence of pretext that the district court failed to view in a light most favorable to her.

The Bank's honest belief argument discounts the context of Alvarado's disputed accusations against Nelson as the reason for her discharge. *Twymon v. Wells Fargo & Co.,* 462 F.3d 925, 935 (8th Cir. 2006). Appellees' Br. at 32-33. The honest belief doctrine typically applies when the employer raises a ground for termination unrelated to the protected conduct at issue. *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1022 (8th Cir. 2011). In *Twymon*, the employer proffered evidence that the plaintiff had been terminated for gross violation of the company's computer policy. *Pye*, 641 F.3d at 1022. Like *Pye*, the Bank's proffered reason for Nelson's termination is inextricably intertwined with the conduct at issue. *Pye*, 641 F.3d at 1022. The Bank claimed initially it terminated Nelson for sexually harassing and

2

assaulting Alvarado at the bar, not for some unrelated reason. The facts the Bank relies on in claiming it believed Alvarado for firing Nelson are disputed from which a jury could find are unworthy of credence. *Pye*, 641 F.3d at 1023. Because the reasons given by the Bank for Nelson's termination are inextricably intertwined with the challenged investigation, the disputed facts should not be resolved at summary judgment. *Pye*, 641 F.3d at 1022.

The Bank's advice of counsel argument requires use of undisclosed communications it asserted was attorney-client privileged. Appellees' Br. at 33. The advice is inadmissible hearsay that cannot support summary judgment. *See* Fed. R. Evid. 802; Fed. R. Civ. Pro. 56 (c)(2). The Bank's counsel may have provided bad advice. T-40. Summary judgment is appropriate only if "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton*, 572 U.S. 650, 656-67 (2014), quoting Fed. R. Civ. Pro. 56 (a). A court must view the evidence in the light most favorable to the opposing party. *Tolan*, 572 U.S. at 657. The Bank is not entitled to a favorable inference by the undisclosed advice of counsel.

The case of *Richey v. City of Independence*, 540 F.3d 779 (8th Cir, 2008), is distinguishable. In *Richey*, the plaintiff was accused of making false allegations of sexual harassment against a co-employee and separately intimidating and abusing co-employees. Appellees' Br. at 34. He was suspended. He appealed his

3

suspension and was granted a hearing before the City's personnel board comprised of five citizens not employed by the City. *Id*. at 782. The board found that he had committed two violations of the City's personnel policy supporting discharge. *Id*. The Court held that where the employer's good faith belief in misconduct is supported by **some independent corroboration**, then the employee must show the explanation is pretextual and that the employer really acted because of the employee's protected activity. *Id*. at 785 (emphasis added).

Unlike *Richey*, the Bank's decision to terminate Nelson was not supported by independently corroborated evidence, but solely on Alvarado's false statements. These are facts, not subjective beliefs. The Bank intentionally avoided independent corroboration from other witnesses.

### 1. Sham Investigation.

The Bank's cursory investigation of Alvarado's accusations against Nelson was not worthy of credence and showed pretext. The Bank interviewed Alvarado for about an hour, removed her from Nelson's supervision, and determined that Nelson would not conduct her annual review. The Bank decided to take action against Nelson before obtaining her version of events. It chose not to interview Plante who Alvarado initially reported to that Nelson grabbed her boyfriend inappropriately. The Bank did not interview anyone else who witnessed events at the bar or with whom Alvarado spoke. The district court observed that "[a] faulty

4

investigation can indicate pretext where the employer did not honestly believe the investigation's results," citing *Johnson v. AT&T Corp.*, 422 F.3d 756, 762 (8th Cir. 2005). ADD011,Order at 11. The Bank neither corroborated nor verified Alvarado's defamatory accusations against Nelson. The district court erred by requiring no evidence of the Bank's proclamation it honestly believed Alvarado.

The Bank's conflicting policies for investigating employee matters supports pretext. The Bank states "it is LEB's practice to keep employee matters confidential and that certainly LEB did not want to provide grounds for a claim for defamation." Appellees' Br. at 36. This position conflicts with Alvarado's actions after the events at the bar when she published defamatory accusations regarding Nelson to her boyfriend, Mulvahill, as well as her parents and step-parents, Mike and Becky Mazzara, and Armando and Victoria Alvarado. The Bank, however, endorsed Alvarado publishing defamatory accusations about her supervisor with family and friends while contending it kept its interviews about Nelson to employees only. The Bank's inconsistent treatment of communicating confidential employee matters with non-employees casts doubt on the validity of its alleged policy reason for failing to interview non-employees in its investigation. *Erickson*, 271 F.3d at 726. Pretext can be established by evidence that it was not the employer's policy or practice to respond the way it responded. *Rideout v. JBS, USA, LLC*, 716 F.3d 1079, 1084 (8th Cir. 2013). A reasonable jury could conclude

5

that the Bank's failure to interview non-Bank employees in its investigation for alleged confidentiality reasons, while condoning Alvarado's discussing her defamatory accusations about Nelson sexually harassing and assaulting her with non-employees in violation of its policy, evidences pretext.

Alvarado's report to Plante put the Bank on notice of her version of events that Nelson grabbed Alvarado's boyfriend inappropriately, not Alvarado. This report was never followed up with by the Bank that became fixated on pointing to the alleged sexually assaultive conduct by Nelson towards Alvarado. A reasonable jury could find that the Bank's failure to interview Plante was unreasonable and unbelievable. Plante had information germane to Alvarado's original accusations that should have been obtained. Her version would have raised doubt about Alvarado's different version to Roettger. The Bank contacted Plante later about whether Alvarado was seeing a psychologist, but not about her reported accusations against Nelson. A jury could find the Bank's actions lacked credibility in genuinely investigating Alvarado's accusations and are pretextual. *Erickson*, 271 F.3d at 726.

The case of *Johnson v. AT&T Corp.*, 422 F.3d 756 (8th Cir. 2005), is distinguishable. Appellees' Br. at 36-37. In *Johnson*, the voice message with plaintiff's bomb threat showing misconduct was corroborated by nine of his co-workers in the investigation. *Id.* at 763. By contrast, the Bank intentionally sought

Appellate Case: 22-2827     Page: 10     Date Filed: 12/20/2022 Entry ID: 5228888

no corroborating evidence of Alvarado's allegations of misconduct against Nelson and had none. The Bank's sole reliance on Alvarado's false report to Roettger was not believable considering she reported a different version to Plante a few minutes earlier. *Wallace v. DTG Operations, Inc.*, 442 F.3d 1112, 1120-21 (8th Cir. 2006).

## 2. Changing Versions.

Alvarado's changing version about events at the bar casts doubt on the believability of her accounts that go to the weight of her testimony and pretext that should be determined by a jury. *Wallace*, 442 F.3d at 1120-21. Alvarado gave differing versions to Plante and Roettger the day she reported Nelson to the Bank. Her different versions were not "innocuous," but raise genuine issues of material fact for the a to decide. Appellees' Br. at 38.

Plante testified in her deposition that on September 25, 2018 Alvarado came to her office between eight and nine a.m. APP295, R.Doc.43,60, at 16. Alvarado reported to Plante that Nelson grabbed her boyfriend inappropriately in a sexual manner:

Q. Where were you when she came to see you?

A. In my office.

Q. Can you describe the conversation you had with Olivia Alvarado when she came to see you at your office?

A. Olivia was very upset regarding an exchange she had had with Heidi at a bar over the weekend and told me that Heidi told her she wanted to fuck her all over the floor of the bathroom. Olivia's boyfriend came to her

7

side to leave the building with her and Heidi grabbed him inappropriately in a sexual manner and she was not comfortable working with Heidi anymore.

Q. Can you remember anything else about the discussion?

A. Yes. I said I will go get you with HR immediately.

Q. Did Olivia say anything else that you can think of?

A. Not that I recall off the top of my head.

Q. Did you make any notes of that meeting and discussion with Olivia Alvarado?

A. I don't recall.

APP295,R.Doc.43,60, at 16.

Plante walked Alvarado to Roettger's office.  APP218,R.Doc.43,15, at 94.

Alvarado then met with Roettger in human resources.  APP061,R.Doc.43,#24.

Alvarado gave Roettger a different version than she had just reported to Plante.

Roettger captured her description of the events at the bar as follows:

Heidi then came over to Olivia and asked if she deserved having to deal with Heidi's boyfriend's ex-girlfriend.  Note that it sounds like this conversation happened with just Heidi and Olivia.  (Heidi and her boyfriend's ex frequently cause problems for each other.  It was mentioned that the ex has called the Bank giving Heidi a hard time.  Heidi has been very open about it in the lobby of the Bar of which she has been told is inappropriate in a meeting with Anne and Julie R. in August 2018).  Olivia told her that it's too bad it's happening, but that Heidi can always go to another bar that the ex is not at.  Heidi then thanked Olivia and grabbed Olivia's breasts and said I'd like to take you in the bathroom and fuck you. Heidi was laughing when this was said and Olivia believes she was joking but Olivia was still very disturbed by it.  It was also obvious that Heidi was intoxicated.  Olivia said she was in disbelief and so she walked away

8

without saying anything to Heidi, to go back over and join her group of friends, which included Olivia's boyfriend. Olivia told her boyfriend about what happened and he asked if they should leave, but Olivia and him decided to stay but to avoid Heidi.

After some time had passed, Heidi went to the area of the bar that Olivia and Olivia's boyfriend and asked them to come over to the area of Heidi and Heidi's boyfriend. Heidi then asked Olivia if her and her boyfriend would like to go to the strip club with them. Olivia declined and said no that's really not my thing. Heidi was also trying to put her tongue in Olivia's mouth (trying to French kiss her) but Olivia kept turning her face away so Heidi actually ended up licking Olivia's face. Olivia mentioned that Heidi attempted to do the same thing to her boyfriend.

APP061-062,R.Doc.43,24, at 1-2.

In her deposition Alvarado described her report to Roettger:

Q. What did you tell Julie Roettger?

A. The same thing, that I ran into Heidi and these were the events that happened. That was kind of it, was just the timeline.

Q. Can you recall what events you told Julie Roettger in the meeting?

A. Well, I ran into Heidi, you know, at the Harbor Bar and we talked and everything was mostly fine, it was just socializing and then she grabbed my chest and told me she wanted to fuck me on the bathroom floor.

Q. Anything else that you can recall telling Julie Roettger?

A. I'm sure, but I don't remember right now.

APP218,R.Doc.42,15, at 95.

Nelson's fiancé, Todd Nelson, described Ms. Nelson's interactions with Alvarado at the bar. He said Alvarado talked about the group she was with and his ex-girlfriend, appearing to try to evoke a reaction. APP081-82,R.Doc.42, at 1-2.

9

Alvarado was intoxicated and talked about the sexual proclivities of some of the men at her table. *Id.* Mr. Nelson stated that Ms. Nelson did not grab Alvarado's breasts, tell her she wanted to take her into the bathroom and fuck her, or attempt to French kiss her or her boyfriend. APP082,R.Doc.42, at 2. He said these events did not happen. *Id.* Nor did Ms. Nelson invite Alvarado and her boyfriend to a strip club. *Id.* He was next to Ms. Nelson the entire time at the bar. *Id.* He said Alvarado's accusations were false. *Id.*

Alvarado's story about the events at the bar changed in her meetings with Plante and Roettger. The changes were not minor. Her version to Plante described Nelson grabbing her boyfriend inappropriately in a sexual manner as he stood by her side. Yet her version to Roettger reported that Nelson grabbed her breasts while her boyfriend was with a group at a table. Alvarado told Roettger that Nelson came over to her and her boyfriend later and licked her face and tried to French kiss her and her boyfriend. In Alvarado's deposition she forgot these later events. APP222,R.Doc.43,15, at 109-110.

The Bank was on notice of Alvarado's shifting accounts by her differing reports to Plante and Roettger. The Bank adopted only the version she gave to Roettger. These inconsistencies cast doubt on Alvarado's accusations and create a genuine issue of material fact as to the underlying motivation of the Bank to accuse Nelson of sexually harassing and assaulting Alvarado at the bar. *See Aromashodu*

10

*v. Swarovski North America Limited, et al*, 2022 WL 16544381 at *4 (Minn. Ct. App., Oct. 31, 2022), ___ N.W.2d ___; *See Hanson v. Dep't of Nat. Res.*, 972 N.W.2d 363, 376 (Minn. 2022).

A reasonable jury could determine that the Bank did not honestly believe Alvarado's story given to Roettger when it was on notice of a different story reported to Plante. The Bank's motive for disregarding the version given to Plante is suspect. A jury should resolve these disputed material facts.

Alvarado's other lies raise questions about her credibility with the weight of the evidence being within the province of a jury. She lied to Nelson and the Bank about why she would not be reporting to work on the Monday after the events at the bar. APP065,R.Doc.43,11. Alvarado texted Nelson that she may try to get in to see her psychologist, but this was a lie because she did not have a psychologist. *Id*. Roettger asked Plante about Alvarado seeing a psychologist and included it in her report. APP063,R.Doc.43,24, at 3. Alvarado's lies create a genuine issue of material fact whether the Bank believed Alvarado's accusations that Nelson sexually harassed and assaulted her at the bar and the Bank's decision to terminate Nelson with no corroboration. A reasonable jury could conclude that had the Bank conducted a legitimate investigation of Alvarado's accusations against Nelson, it would have discovered her report was riddled with lies and inconsistencies.

11

### 3. Failure to Follow Policies and Practices.

The Bank's president, Raleigh, testified about the Bank's policy for maintaining investigation interview notes and placing them into the employee's file. APP340,R.Doc.43,62, at 89. He said "Julie Roettger was newer to the organization and I did have a very specific conversation with her that we keep all notes in the file." *Id.* Raleigh testified that it would not be appropriate to shred notes during her investigation of the allegations against Nelson. APP334,R.Doc.43,62, at 68. Billingsley said Roettger typically did a good job of making sure the notes got into the file. APP270,R.Doc.43,40, at 19-20. The Bank's contention that no policy existed is contrary to the testimony of its executives. Appellees' Br. at 39.

A reasonable jury could find that Roettger shredded her interview notes from the investigation contrary to the Bank's policy and practice to place them into the employee's (Nelson's) file which shows pretext. *See Erickson*, 271 F.3d at 727. A jury could conclude the Bank shredded the interview notes to destroy information favorable to Nelson. Roettger could not recall transcribing everything from the handwritten notes. APP243,R.Doc.43,30, at 54-55. The district court erred in weighing the Bank's shredding the handwritten notes contrary to its practice and policy against the Bank's post hoc explanation and adopting it as a matter of law. Order at 12,ADD012.

Appellate Case: 22-2827     Page: 16     Date Filed: 12/20/2022 Entry ID: 5228888

Relatedly, the district court erroneously concluded that Roettger maintained transcribed copies of her notes. Order at 12,ADD012. Roettger did not maintain transcribed copies of her notes. She had her reports on her interviews of Alvarado and Nelson that contained matters gathered outside of the context of the interviews. The reports were not transcriptions of her interview notes and contained an introduction and questions to ask. Paragraph 11 in Alvarado's report described communications between Roettger and Plante. APP063,R.Doc.43,24, at 3. Alvarado had opportunity to review Roettger's report for accuracy and made no changes.

### 4. Comparator Evidence.

Nelson is not required to have first-hand knowledge of Steve Madsen's sexual harassment when other evidence of the harassment exists. Madsen told Nelson that Molly O'Malley was pursuing a harassment complaint against him. APP162,R.Doc.44, at 198. He was told not to attend an event for O'Malley. *Id.* O'Malley told Nelson that she was going to human resources to do a complaint because Madsen was "bothering" her. APP161,R.Doc.44, at 161. O'Malley showed Nelson a letter she was giving to Madsen and the Bank. APP162,R.Doc.44, at 199-200. Raleigh was aware of "something" with Madsen and O'Malley. APP323,R.Doc.43,62, at 23.

13

O'Malley's reports to Nelson were not hearsay, but admissible statements made by an employee on matters within the employment relationship.  *See* Fed. R. Evid. 801(d)(2)(D);  *White v. Honeywell, Inc.*, 141 F.3d 1270, 1276 (8th Cir. 1998).

Barney Patterson violated the Bank's policies without investigation or consequence.  Patterson harassed Ana Martin, a teller, and Nelson told her to go to human resources.  Nelson experienced Patterson's sexually offensive comments to her and subordinates and told him to stop.

Patterson often reported to work intoxicated contrary to company policy. The Bank's policy on Drugs, Narcotics and Alcohol stated, in part, "No employee shall report to work under the influence of alcohol …"  APP102.R.Doc.43,#2, at 18.   Nelson and others complained about Patterson being intoxicated. APP164,R.Doc.44, at 206,208.   Billingsley acknowledged Patterson being intoxicated at work.  APP270,R.Doc.43,30, at 17.  She characterized his intoxication at work as a confidential health issue, rather than a policy violation. *Id*.  She could not recall Patterson being investigated or disciplined for being intoxicated at work.   APP270,R.Doc.43,30, at 17-18.  Patterson would often show up in Nelson's work area intoxicated.  APP164,R.Doc.44, at 206.  Nelson reported Patterson's intoxication to human resources and to President Raleigh's wife, who worked at the Bank.  APP164,R.Doc.44,at 208.  Despite violating Bank policies,

14

Patterson continued harassing Nelson until her discharge. A reasonable jury could find that the Bank treated Nelson differently than male executive level employees by not investigating complaints of policy violations or taking corrective action like it did with Nelson. Nelson is entitled to a fair opportunity to show differential treatment by the Bank. *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973).

The method suggested by *McDonnell Douglas* for pursuing this inquiry, however, was never intended to be rigid, mechanized, or ritualistic. *Furnco Constr. Co. v. Waters*, 438 U.S. 567, 577 (1978). This reasoning is apropos where Plante and Raleigh both exercised supervision of Nelson, but Raleigh was the decision-maker relative to her discharge. The district court found that Madsen and Patterson were not proper comparators to Nelson because they did not report to the same supervisor – Plante. ADD014,Order at 14. Plante, however, was not involved in Nelson's discipline, was not involved with the investigation of Alvarado's complaint, and was not involved in her discharge. She did not know why Nelson was fired. APP315,R.Doc. 43,60, at 94. By contrast, Raleigh met with Roettger and Billingsley during the investigation and for the final decision to discharge Nelson. The proper comparator should be the decision-maker for Nelson's discharge, not who held the title of supervisor. *See e,g., Frieze v. Boatman's Bank of Belton*, 950 F.2d 538, 541 (8th Cir. 1991) (finding that stray

15

remarks by individuals who do not take part in the decision to discharge an employee cannot be direct evidence of discrimination).

Raleigh supervised Nelson at times concurrently with Plante. He reviewed her performance reviews as her supervisor. APP331,R. Doc.43, 62, at 53. He did not review performance reviews of other bank officers. *Id*. Raleigh was previously involved in investigating Nelson for being rude and gave her a memo in 2017. APP275,R.Doc. 43,40, at 40. He was helping Plante supervise Nelson in 2017. APP329,R. Doc. 43,62, at 46. Raleigh said it is typically the supervisor and human resources that handle employee terminations. APP321,R.Doc. 43, 62, at 15. Oftentimes Raleigh is not involved at all. *Id*. A jury could find the Bank's treatment of Nelson's discharge by Raleigh taking a special interest in her situation was different than a typical discharge of males and shows pretext. This evidence shows that comparator evidence needs flexibility when an employee's "supervisor" by title has no involvement in the discharge decision at the heart of the case. The district court erroneously applied a rigid, mechanistic application of the rule for comparators without regard to the specifics of Nelson's situation with Plante not involved with Nelson's discharged while Raleigh was involved. This Court should not apply a similar rigid, mechanistic approach to the pretext analysis. *Furnco Constr. Co.*, 438 U.S. at 577.

16

Raleigh said the decision to discharge Nelson was made as a group by him. Billingsley, and Roettger. APP321,R.Doc. 43, 62, at 15. Raleigh met with them and they told him what happened. *Id*. at 14-15. He did not see the investigation reports before agreeing to Nelson's termination. APP334,R.Doc. 43,62, at 65. Raleigh first saw the Harassment Investigation for the Accused, Nelson, at his deposition. *Id*. The same with the report "Harassment Investigation for the Accuser," Alvarado. APP332,R.Doc. 43,62, at 58. A reasonable jury could find that the investigation and discharge was a sham when a key decision-maker in Nelson's termination, Raleigh, had not read the investigation reports or learned important details before approving her discharge.

To rule that Nelson and Madsen and Patterson are not suitable comparators because Nelson reported to Plante, who had no input into the decision to terminate Nelson, makes little sense. Such an approach is a mechanistic application of the same supervisor rule applied in cases where the supervisor is involved in the discipline imposed. *Furnco Constr. Co.*, 438 U.S. at 577. Because Nelson's supervisor was not involved in the discharge decision, the title of supervisor has little bearing for comparators.

**5. Shifting Reasons.**

The Bank's reasons for terminating Nelson have shifted. Initially the Bank said Alvarado's accusations of Nelson's sexual misconduct at the bar was the

17

reason. APP287,R.Doc.43,40, at 87. Then the Bank said it considered Alvarado's

July peer review that was unrelated to the events at the bar. APP258,R.Doc.43,30,

at 116. At the summary judgment hearing the Bank argued that a history of

performance issues and inappropriate conduct were also reasons. T-4. Nelson did

not have a history of performance issues and her last review was satisfactory.

R.Doc.43,6. The Bank's shifting reasons show pretext. *Lake*, 596 F.3d at 874.

## II. Summary Judgment on Nelson's Defamation Claims Should Be Reversed.

### A. Publication.

The Bank and Alvarado published Alvarado's defamatory statements.

Citing no authority, they contend that Nelson must show publication to a third

party. Appellees' Br. at 46. Publication requires proof that the defamatory

statements were published to someone other than Nelson. *Larson v. Gannett Co.*,

940 N.W.2d 120, 130 (Minn. 2020). Nelson satisfied publication. Alvarado

communicated the defamatory statements to her boyfriend, Brylen Mulvahill; her

mother, Becky Mazzara; step-father and Bank employee, Mike Mazzara; father,

Armando Alvarado; step-mother, Veronica Alvarado; and Bank employees Plante,

Roettger, and Billingsley. Billingsley and Roettger republished the defamatory

statements to Raleigh. Under the republication doctrine, a speaker may be liable

for repeating the defamatory statements of another. *Larson*, 940 N.W.2d at 131;

*Frankson v. Design Space Intern.*, 394 N.W.2d 140, 144 (Minn. 1986)

18

(intracorporate communication satisfies publication). The Bank is vicariously liable for Alvarado's defamatory statements. *Krekelberg v. City of Minneapolis*, 991 F.3d 949, 954 (8th Cir. 2021).

## B. Qualified Privilege Erroneously Granted for Statements During the Investigation.

Qualified privilege applies only if the statement is made in good faith, upon a proper occasion, with proper motive, and is based upon reasonable or probable cause. *Bol v. Cole*, 561 N.W.2d 143, 149 (Minn. 1997). Whether a party has probable cause to believe that her defamatory statement is true is a question of law unless the evidence as to the existence of probable cause leads to more than one conclusion. *Scott Fetzer Company v. Williamson*, 101 F.3d 549, 555 (8th Cir. 1996); *Wirig v. Kinney Shoes, Corp.*, 461 N.W.2d 374, 380-81, n.4, (Minn. 1990). It then becomes a jury question. *Wirig*, 461 N.W.2d at 380, n.4. When a party making a defamatory statement takes no steps to investigate but relies entirely on hearsay without verification, he has not acted as a reasonably prudent person and lacks probable or reasonable grounds for making a defamatory statement. *Williamson*, 101 F.3d at 555; *Wirig*, 461 N.W.2d at 380-81, n.4. The Bank's failure to adequately investigate Alvarado's statements while relying entirely on her false allegations without verification was not reasonable and is not entitled to qualified privilege.

19

A genuine issue of material fact exists whether the statements were made in good faith, with proper motive, and based upon reasonable or probable cause because of Alvarado's different reports to Plante and Roettger. The Bank was on notice that Alvarado told Plante that Nelson grabbed her boyfriend – not Alvarado - inappropriately in a sexual manner. This version differed from what she told Roettger. The Bank's motivation for moving forward with tunnel vision focused on Alvarado's defamatory statements of sexual misconduct by Nelson she reported to Roettger raises genuine issues of material fact about the Bank's motive. *Aromashodu*, 2022 WL 16544381 at *5.

### C. Privilege was Abused.

Genuine issues of material fact exist on the question of the Bank's abuse of qualified privilege and actual malice that should be resolved by a jury. *Lewis v. Equitable Life Assurance Soc. of the U.S.*, 389 N.W.2d 876, 890 (Minn. 1986).

Nelson presented evidence of actual malice to defeat qualified privilege which included Alvarado's peer review of July, 2018 containing scathing statements about her professional reputation as a banker. Alvarado stated she strongly believed that "action needs to be taken against Heidi." ADD025,R.Doc.43,18 , at 4. A reasonable jury could find that Alvarado made her defamatory statements about Nelson in September as a disguised follow up to her

Appellate Case: 22-2827    Page: 24    Date Filed: 12/20/2022 Entry ID: 5228888

professional attack on Nelson in her July peer review after no action had been taken. This demonstrates ill will and actual malice.

The Bank mischaracterizes Nelson's arguments contending she argued actual malice because LEB failed to investigate Alvarado's allegations. Appellees' Br. at 50. Nelson's arguments address the district court's erroneous conclusion that actual malice was not shown because Nelson's evidence did not focus on "personal" ill will and personal animosity by Alvarado. Order at 18,ADD018. The district court mis-applied the law. Actual malice requires evidence of ill will, including ill will to harm Nelson's professional reputation as a banker. *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 257 (Minn. 1980); *Bahr v. Boise Cascade*, 766 N.W.2d 910, 920 (Minn. 2009); *Lewis*, 389 N.W.2d at 891.

Evidence of actual malice included the scathing peer review of Nelson by Alvarado of July 9, 2018. The Bank considered the review in firing her in September. ADD022. A reasonable jury could find that Alvarado was motivated to harm Nelson's professional reputation at the Bank by fabricating lies about Nelson being lazy, absent-minded, taking two and a half hour lunches, arriving late and leaving early, bar-room flaunts, denigrating remarks about her personal life, and other falsifications, in the peer review. Alvarado wanted "action" taken against Nelson. Alvarado's statements in the peer review show ill will toward Nelson in the workplace as a banker. Neither Alvarado nor others at the Bank

21

raised any of the concerns in the peer review with Nelson. A reasonable jury could find the peer review showed actual malice to defeat qualified privilege for Alvarado's defamatory statements.

The Bank and Alvarado contend that Alvarado's ill will towards Nelson in her July peer review is infirm because it was in writing. Appellees' Br. at 50. Alvarado supplied the peer review to Roettger in September after her interview. The law carries no requirement that actual malice bear closer proximity to the defamation. Nevertheless, Alvarado's defamatory statements about Nelson at the bar in September focus her ill will on damaging her professional reputation as her supervisor and banker like the peer review.

Alvarado made other comments about Nelson showing ill will towards her professional reputation as a banker in her interview with Roettger which was included in Roettger's report. Alvarado told a false rumor about Nelson at a company Christmas party that she put shots in between her breasts and asked fellow male employees to "come and get it." ADD028,R.Doc. 43,24, at 3. The statement had nothing to do with the events at the bar, but was another opportunity for Alvarado to speak ill of Nelson to the Bank's management. The Bank did not ask Nelson about the rumor. A reasonable jury could find that Alvarado's cunningness in speaking ill of Nelson's professional reputation behind her back, while portraying a sunny disposition in her presence, epitomizes actual malice

22

demonstrating abuse of qualified privilege. The Bank, like the district court, cites no authority precluding use of an employee's statements in an interview with HR personnel from showing actual malice. Appellees' Br. at 51-52. Otherwise, employees could fabricate lies about co-employee reputations aimed at derailing their professional careers and demand action be taken without consequence. Employers would be dissuaded from verifying the most outrageous lies and rumors - like what happened here.

### D. No Qualified Privilege for Defamatory Statements to Family and Boyfriend.

Appellees cite no Minnesota Supreme Court authority supporting qualified privilege for Alvarado's defamatory statements published to her boyfriend, Brylen Mulvahill, her mother, Becky Mazzara; step-father and Bank employee, Mike Mazzara; father, Armando Alvarado; and step-mother, Veronica Alvarado. Appellees' Br. at 52. Appellees' have not met their burden of establishing that a qualified privilege applies. *Lewis*, 389 N.W.2d at 890.

The Bank and Alvarado contend that Alvarado should be encouraged to publish her defamatory statements to these non-work individuals, but the reasoning is flawed. Her statements to them were not made for a proper purpose or motive. She had the opportunity to report the statements to the Bank and was required to do so under company policy. President Raleigh said the Bank's policy was not to discuss employee matters with non-employees of the Bank. Appellees want it both

23

ways by claiming the Bank did not interview non-Bank witnesses about the events at the bar for confidentiality reasons, while endorsing Alvarado's publishing defamatory statements to non-Bank employees.

Alvarado was not investigating when she published the defamatory statements to Mulvahill at the bar and again afterwards. Similarly, publishing the defamatory statements about Nelson to her parents and step-parents was not for a proper purpose. Alvarado's contention that she was asking them what to do rings hollow when she knew what to do by reporting to Plante and did so. She was covered by the Bank's reporting policy. She presented no evidence that her boyfriend or family knew what she should do or why she thought they would know. She did not say she asked all of them what she should do. A reasonable jury could find that her failure to mention she spoke with others about Nelson, besides Mazzara, in her interview with Roettger shows it came as an after-thought to claim she sought advice as to what to do. Minimally, a jury should resolve what happened and whether privilege should attach.

Similarly, Alvarado never mentioned to Roettger that she discussed the incident with her boyfriend, Mulvahill, mother, Becky Mazzara, father Armando Alvarado, or step-mother, Victoria Alvarado. APP062,R.Doc,43,24, Question 8. Genuine issues of material fact exist whether she actually sought their advice as to what she should do. Further, Alvarado presented no evidence that her boyfriend,

24

mother, step-father, father, and step-mother had information about what she should do. A reasonable jury could find that her publishing the defamatory statements about Nelson was not made in good faith, upon a proper occasion, with proper motive, or based upon reasonable or probable cause to enjoy qualified privilege. *Bol v. Cole*, 561 N.W.2d at 149.

The evidence reflects Alvarado's history of besmirching Nelson's work reputation to family. This was illustrated by her text with her father, Armando Alvarado, after Nelson's firing and his response "Lmao." APP079, R.Doc.43, 28. Alvarado texted "I'm sure it was 35 years of stuff built up. My thing was just the last straw." *Id*. Her father closed the text with "Everyone knows." *Id*. This is consistent with her disparaging remarks about Nelson's professional reputation as a banker in her peer review.

Alvarado's defamatory statements falsely accused her supervisor, Nelson, of criminal conduct and sexual misconduct, and were defamatory per se. Statements recognized as defamatory per se include "false accusations of committing a crime and false statements about a person's business, trade, or professional conduct." *Becker v. Alloy Hardfacing & Eng'g & Co.*, 401 N.W.2d 655, 661 (Minn. 1987). Generally, sexual contact between adults must be nonconsensual to constitute sexual assault. *Johnson v. Freborg*, 978 N.W.2d 911, 918 (Minn. Ct. App. 2022); *See, e.g.*, Minn. Stat. § 609.3451, subd. 1 (2020) ("A person is guilty of criminal

Appellate Case: 22-2827    Page: 29    Date Filed: 12/20/2022 Entry ID: 5228888

sexual conduct in the fifth degree if ... the person engages in *nonconsensual sexual contact.*" (emphasis added)). Alvarado's defamatory statements about Nelson "grabbing her breasts" and "licking her face" fit this description.

Alvarado's statements about Nelson were defamatory per se accusations of criminal sexual assault and misconduct by her work supervisor. They were not statements concerning her private interests in the context of her private affairs. Appellees' Br. at 54. Qualified privilege should not be granted for defamatory statements published to her boyfriend and family members based solely on her own description of the time and place of publication. *Id.*

Alvarado should not publish false and defamatory statements about Nelson committing sexual misconduct without recourse available to Nelson. Appellees' Br. at 53. Nelson said she did not grab Alvarado's breasts, tell her she wanted to take her into the bathroom and fuck her, or try to French kiss her and her boyfriend at the bar. Todd Nelson, who was next to Ms. Nelson at the bar, testified these events did not happen and the statements were false. APP082,R.Doc.42, para. 6. Individuals who falsely report being sexually harassed and assaulted to damage the professional reputation and career of a supervisor they harbor ill will towards should not benefit from qualified privilege. A person's reputation should not be defamed without recourse.

The case of *Moreno v. Crookston Time Printing Co.*, 610 N.W.2d 323 (Minn. 2000), does not support the open-ended expansion of qualified privilege for defamatory statements published to family and friends. Appellees' Br. at 54. In *Moreno*, the fact that the police chief spoke to the media and that the media reported on the police chief's statements did not entitle the media to the privilege for reporting on the chief's statements. The Minnesota Supreme Court limited the privilege only to the "report on the events of the city council meeting." *Id.*, at 334. Extending the privilege to family and friends creates a new, unwarranted, and unlimited exception that precludes a remedy for individuals wrongly defamed.

A family and friends privilege is not subject to unbiased corroboration like qualified privilege in employment investigations or fair reporting by the media. Instead, it relies on the version of the person accused of the defamation to establish the privilege. This extension of the privilege creates opportunity for abuse that will eradicate defamation claims. The privilege for Alvarado's statements to her boyfriend and family relied entirely on her explanation without corroboration. No case, including *Moreno*, supports this broad extension of privilege.

The right of an individual to the protection of her own reputation from unjustified invasion and wrongful hurt reflects no more than our basic concept of the essential dignity and worth of every human being—a concept at the root of any decent system of ordered liberty. *Rosenblatt v. Baer*, 383 U.S. 75, 92 (1966).

Appellate Case: 22-2827    Page: 31    Date Filed: 12/20/2022 Entry ID: 5228888

An action for damages is the only hope for vindication or redress the law gives to a person whose reputation has been falsely dishonored. *Id*., at 93. The preventive effect of liability for defamation serves an important public purpose. *Id*.

Because the statements are defamatory per se, general damages are presumed. *Becker*, 401 N.W.2d at 661. General damages are recoverable without proof of actual damages. *Id*. Nelson lost her job, became distraught, suffered pain and mental anguish, and saw a therapist. APP083,R.Doc.42,at 3; APP192,R.Doc.44, at 320-323. A jury should decide the damages to Nelson from the harm caused by Alvarado's defamatory statements.

### E. Abuse of Privilege

Appellees have not addressed abuse of privilege for Alvarado's defamatory statements to her boyfriend and family and have waived argument on the issue. Any privilege was abused by actual malice for the reasons stated above and in Nelson's principal brief.

## CONCLUSION

The district court erred granting summary judgment on Nelson's sex discrimination claim against the Bank under the MHRA and defamation claims against the Bank and Alvarado. The case should be reversed and remanded for trial.

28

Respectfully submitted,

**STEPHEN C. FIEBIGER LAW OFFICE, CHARTERED**


Dated: __December 19, 2022___          s/Stephen C. Fiebiger_____
                                        Stephen C. Fiebiger (#0149664)
                                        3000 West County Road 42, Suite 310
                                        Burnsville, MN 55337
                                        (952) 746-5171
                                        Stephenfieblaw@gmail.com

                                        **ATTORNEY FOR APPELLANT**



## <u>CERTIFICATE OF COMPLIANCE</u>

Counsel for Appellant certifies that except as set forth herein this brief complies with the type limitation of Rule 32 (a)(7)(B) and (C) and contains 6,485 words. The font is 14 point Times New Roman. The following word processing software system was used to prepare this brief: Microsoft Word Windows 10. The brief and addendum have been scanned for viruses and are virus free.


Dated: __December 19, 2022_____          s/Stephen C. Fiebiger_____
                                          Counsel for Appellant